**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-0092-WJM-BNB

LEHMAN BROTHERS HOLDINGS, INC.,

      Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

      Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This breach of contract action is brought by Plaintiff Lehman Brothers Holdings, Inc. ("Plaintiff"), as successor in interest to Lehman Brothers Bank, FSB ("LBB"), against Universal American Mortgage Company, LLC ("Defendant").  Plaintiff alleges that Defendant breached certain representations and warranties it made regarding mortgage loans it sold to LBB, and that Defendant was thus contractually obligated to repurchase the loans and/or indemnify Plaintiff.  (Am. Compl. (ECF No. 7).)  Before this Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 42.)  For the following reasons, Defendant's Motion is GRANTED.

## I.  BACKGROUND

The relevant undisputed facts are as follows.  On September 20, 2005, Defendant and LBB entered into a Loan Purchase Agreement (the "Agreement") which provides for the purchase and sale of mortgage loans.  (Statement of Undisputed

Material Facts[1] ("SUMF") (ECF No. 42 at 2-4) ¶ 6.)  In addition to the conditions contained in the Agreement, it also expressly incorporates the additional terms and conditions of the Aurora Loan Services Seller's Guide (the "Seller's Guide").  (*Id.* ¶ 8.) The Agreement and the Seller's Guide (together, the "Purchase Agreement") set forth the obligations and duties of the parties, including various representations and warranties by the seller regarding individual mortgage loans purchased or sold, and remedies for breach of those representations and warranties.  (*Id.* ¶ 10.)  Pursuant to the Purchase Agreement, these representations and warranties are made as of the purchase date for each loan.  (*Id.*)  The Purchase Agreement contains an express New York choice of law provision.  (*Id.* ¶ 7.)

Defendant sold numerous loans to LBB under the Purchase Agreement, including the loan challenged here (the "Storemski Loan").  (*Id.* ¶ 8.)  LBB purchased the Storemski Loan from Defendant on September 1, 2006, and subsequently sold the loan to Plaintiff.  (*Id.* ¶ 9; Am. Compl. ¶ 21.)  On or about October 30, 2006, Plaintiff sold the Storemski Loan to Freddie Mac.  (SUMF ¶ 11.)  On February 29, 2008, Freddie Mac demanded that Plaintiff indemnify it for its losses incurred as a result of the foreclosure of the property securing the Storemski Loan, alleging that Plaintiff violated the purchase agreement it had with Freddie Mac.  (SUMF ¶ 13.)  On May 23, 2008, Plaintiff paid Freddie Mac in compliance with its demand.  (*Id.* ¶ 14.)

On March 11, 2011, Plaintiff filed suit with respect to several loans in the U.S. District Court for the Southern District of Florida.  (*Id.* ¶ 17.)  Plaintiff's claims were

---

[1] The Court cites only to those portions of Defendant's Statement of Undisputed Material Facts that are not disputed by Plaintiff.  (*See* ECF No. 48 at 2-4.)

dismissed in January of 2013, and Plaintiff was granted leave to re-file its claims in several separate lawsuits, including the instant action with respect to the Storemski Loan. (*Id.*)  On January 16, 2013, Plaintiff filed the instant action, and an Amended Complaint was filed the following day. (ECF Nos. 1 & 7.)  Plaintiff, as LBB's assignee, alleges that Defendant breached the Purchase Agreement with LBB by breaching the representations and warranties described therein, and by refusing to repurchase the Storemski Loan and/or indemnify Plaintiff for its losses. (Am. Compl. ¶¶ 53-54.)

Defendant filed the instant Motion on January 15, 2014. (ECF No. 42.)  Plaintiff filed a Response to Defendant's Motion on January 21, 2014 (ECF No. 48) and a Supplement to its Response on February 6, 2014 (ECF No. 55).  Defendant filed its Reply on February 7, 2014. (ECF No. 58.)  With leave of Court, Plaintiff filed a Sur-Reply on February 17, 2014 (ECF No. 63), and Defendant filed a Notice of Supplemental Authorities on August 15, 2014 (ECF No. 67-1).  The parties' subsequent requests to file further briefing on the Motion were denied.[2] (ECF Nos. 75 & 84.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient

---

[2] Also pending in this action are Plaintiff's Motion to Exclude Defendant's Expert and Strike Defendant's Expert Report (ECF No. 41) and Plaintiff's Partial Motion for Summary Judgment (ECF No. 43).  The Court need not address these motions because the instant order granting summary judgment in Defendant's favor disposes of the entire case.

disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

Defendant's Motion raises three arguments that summary judgment is warranted: (1) Plaintiff's claim is time-barred; (2) Plaintiff's claim fails for lack of causation; and (3) Plaintiff's claim for indemnification fails because its payment to Freddie Mac was voluntary.  (ECF No. 42 at 7-18.)  Because the Court finds Defendant's statute of limitations argument dispositive, it will begin with this argument.

The key disputed issue with respect to the statute of limitations is whether the Court should apply New York or Delaware's limitations period.  While the parties agree that the Purchase Agreement is governed by New York law, they dispute whether the New York "borrowing" statute should be applied in this case to determine which state's statute of limitations should be used.  (*See* ECF Nos. 42 at 7-11; 48 at 7-10.)  The New York borrowing statute provides that:

> An action based upon a cause of action accruing without the state cannot be
> commenced after the expiration of the time limited by the laws of either the

4

state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. Civ. Prac. Law and Rules ("CPLR") § 202. "When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999). The parties dispute the following: (1) whether LBB was a New York resident; (2) whether Plaintiff's claim accrued outside New York; (3) whether the Purchase Agreement's choice of law provision precluded the application of the borrowing statute; and (4) whether the statute of limitations period was tolled. The Court will discuss each argument in turn.

**A.     LBB's State of Residency**

For the purposes of the borrowing statute, the Court must consider the residency of LBB at the time of the alleged breach, regardless of the fact that LBB subsequently assigned its claims to Plaintiff. *See Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 747 (N.Y. 1984) (holding that a personal injury plaintiff's residency for purposes of CPLR § 202 was determined at the time of the injury). "In the case of a corporate plaintiff, [its place of residency] may be the state of incorporation or its principal place of business." *Oxbow Calcining USA v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 30 (N.Y. App. Div. 2012). Because LBB was a federally chartered savings association, it was not incorporated under the laws of any state. *See Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, __ F. Supp. 2d __, 2014 WL 292858, at *4 (D. Colo. Jan. 27,

2014).  Therefore, the borrowing statute only applies if LBB's principal place of business was outside of New York.

Plaintiff argues that LBB's principal place of business was located in New York at all relevant times.  (ECF No. 48 at 12-14.)  However, as a federal savings association, LBB's principal place of business "is the State in which the institution maintains its home office."  12 C.F.R. § 1263.18(b); *see also* 12 C.F.R. § 561.39 ("The term principal office means the home office of a savings association . . . .").  LBB's home office was in Delaware at all relevant times, making it a resident of Delaware.  (*See* ECF No. 48 at 2.)

Nevertheless, Plaintiff argues that a case from the Central District of California establishes that LBB was also a New York resident because it had "a significant connection with some locality in the State."  (ECF No. 48 at 11-14 (quoting *Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 834 F. Supp. 2d 949, 952-58 (C.D. Cal. 2012)).)  The Court finds that *Countrywide* fails to support the proposition for which Plaintiff cites it, and agrees with the decision of another District Judge in this District, ruling in a case between the same parties, that Plaintiff's reading of *Countrywide* is "unsupportable."  *See Lehman Bros. Holdings*, 2014 WL 292858, at *4.  Accordingly, the Court finds that LBB was a Delaware resident at all relevant times, thus satisfying the first condition for application of the borrowing statute.  *See* CPLR § 202.

**B.  Accrual**

"For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained.  In cases involving economic harm, that place is normally

the state of plaintiff's residence." *Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989).

Defendant contends that because Plaintiff's claim is for an "economic injury" resulting from an alleged breach of contract, it accrued at the site of LBB's home office in Delaware, and at the time Defendant sold the Storemski Loan, on September 1, 2006.  (ECF No. 42 at 8-11.)  Plaintiff disputes both when and where its claim accrued, arguing that its claim for indemnification did not accrue until it paid Freddie Mac in 2008, and that it accrued in New York in favor of Plaintiff, a New York resident.  (*See* ECF No. 48 at 5; *see also* ECF No. 55.)  Plaintiff cites New York law holding that a claim for indemnification accrues on the date of the payment to the third party.  (ECF No. 55 at 2 (citing *McDermott v. City of New York*, 406 N.E.2d 460, 462-63 (N.Y. 1980)).)

The Court finds Plaintiff's argument unconvincing.  "In New York, a breach of contract cause of action accrues at the time of the breach."  *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993).  The claim at issue in this case is a breach of contract caused by breaches of "the representations, warranties, and/or covenants" in the Purchase Agreement.  (Am. Compl. ¶¶ 51-53.)  Defendant's alleged failure to repurchase the Storemski Loan and to indemnify it for its losses from its payment to Freddie Mac are merely pre-suit contractual remedies.  The existence of such remedies does not convert this claim for breach of contractual representations and warranties into one for indemnification.  *See Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 477

(S.D.N.Y. 2014) ("'[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused.'  This issue has been repeatedly addressed and resolved [by New York courts.]") (internal citation omitted).

The Court has previously considered a similar argument in a related case, wherein the same Plaintiff alleged that the defendant's subsequent failure to repurchase the loan constituted a second breach that triggered a new limitations period. *See Aurora Commercial Corp. v. Standard Pac. Mortg.*, 2014 WL 1056383 (D. Colo. March 19, 2014).  The Court rejected Plaintiff's argument in that case, holding that Plaintiff's cause of action accrued when Plaintiff possessed a "legal right to demand payment," which occurred on the date of the breach.  *Id.* at *4-*5 (quoting *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012)).  Similarly, in this case, Defendant's alleged failures to repurchase the Storemski Loan and to indemnify Plaintiff when it paid Freddie Mac did not constitute new breaches triggering new limitations periods.

Because Plaintiff's claim accrued in 2006 when the alleged breach of the representations and warranties occurred, the claim accrued in favor of LBB, a Delaware resident, and therefore accrued in Delaware.  *See Gorlin*, 706 F. Supp. at 240; *Ely-Cruikshank*, 615 N.E.2d at 986.  This satisfies the second condition for application of the borrowing statute.  *See* CPLR § 202.  Accordingly, the Court must ensure that Plaintiff's claim is timely under both the New York and Delaware statutes of limitations. Delaware law imposes a three-year statute of limitations for breach of contract actions.

10 Del. Code § 8106.  Plaintiff purchased the Storemski Loan in 2006, but did not file its initial complaint in the Southern District of Florida until 2011.  (SUMF ¶ 17.)  Therefore, if the borrowing statute applies, Plaintiff's claim is barred by the Delaware statute of limitations.

## C.    Contractual Choice of Law

Plaintiff argues that the borrowing statute should not apply because the Purchase Agreement contained an express New York choice of law provision, which implicitly incorporated New York's six-year statute of limitations.  (ECF No. 48 at 7-11.)  Plaintiff further contends that by applying the borrowing statute, the Court would be engaging in a conflict-of-laws analysis despite the parties' express desire to apply New York substantive law and remedies "without regard for the principles of conflicts of laws".  (*Id.* at 7-10.)

The Purchase Agreement provides that it "shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws."  (ECF No. 7-3 at § 713.1.)  The Court finds that the Purchase Agreement's choice of law clause does not necessitate applying New York's six-year statute of limitations and disregarding the New York borrowing statute.  "Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of limitation."  *Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985).  Here, the Purchase Agreement explicitly refers to "substantive law" and does not state an intention to include the New York

9

statute of limitations into its provisions while precluding the use of the New York

borrowing statute.  "Absent an express statement of intent, a standard choice of law

provision such as this one will not be interpreted as covering a statute of limitations."

*Id.*; *see also Portfolio Recovery Assocs. v. King*, 927 N.E.2d 1059, 1061 (2010)

("Choice of law provisions typically apply to only substantive issues and statutes of

limitations are considered 'procedural' because they are deemed as pertaining to the

remedy rather than the right.") (internal citation omitted).

As to Plaintiff's next argument, the Court finds that applying the New York

borrowing statute does not require a conflict-of-law analysis in contravention of the

terms of the Purchase Agreement.  "New York courts have confirmed clearly that the

borrowing statute is a statute of limitation, not a choice-of-law provision."  *Lehman Bros.*

*Holdings,* 2014 WL 292858, at *3, n.8 (further noting that "[t]he language on which

plaintiff places so much reliance in this regard is the rankest of dicta"); *see also Global*

*Fin. Corp.*, 715 N.E.2d at 484 ("[T]here is a significant difference between a choice-of-

law question, which is a matter of common law, and this Statute of Limitations issue,

which is governed by particular terms of the CPLR."); *Ledwith*, 660 N.Y.S.2d at 406

("[M]odern choice-of-law decisions are simply inapplicable to the question of statutory

construction presented by CPLR 202.").  Therefore, the Court finds that application of

the borrowing statute is not foreclosed by the contract's choice-of-law provision.[3]

_____

[3] The Court need not consider Plaintiff's argument that applying the borrowing statute would invoke *renvoi*, as this doctrine has been held to have "no bearing on the application of New York's borrowing statute."  *Lehman Bros. Holdings,* 2014 WL 292858, at *3 n.9 (citing *Baena v. Woori Bank*, 2006 WL 293572, at *7 (S.D.N.Y. Oct. 11, 2006); *see also Ledwith v. Sears Roebuck & Co., Inc.*, 660 N.Y.S.2d 402, 406 (N.Y. App. Div. 1997) ("[C]ourts have refused to apply *renvoi* . . . to circumvent CPLR 202.").

D.      **Tolling**

Even assuming that the borrowing statute applies, Plaintiff argues that the Delaware statute of limitations should be tolled.  (ECF No. 48 at 5-6.)  Plaintiff contends that Delaware tolls the statute where a claimant could not have discovered the existence of its cause of action, and that Plaintiff here could not have discovered its claim earlier because LBB relied on Defendant's representations as to the loan quality. (*Id.*)

The Court need not determine whether the statute of limitations was tolled, because this action is time-barred regardless of whether Plaintiff's reading of Delaware law is correct.  Even assuming, without deciding, that the limitations period was tolled until Plaintiff discovered Defendant's breach on the date that Freddie Mac demanded payment, Plaintiff's suit is still untimely.  It is undisputed that Freddie Mac's demand for payment was made on February 29, 2008, more than three years prior to March 11, 2011, when Plaintiff filed its action in the Southern District of Florida.  (SUMF ¶¶ 13, 17.)  Accordingly, Plaintiff's claim is untimely irrespective of any tolling.

In sum, the Court has found that because the New York borrowing statute applies to Plaintiff's claim, it must therefore be timely under the limitations periods of both New York and Delaware, and that because this action was filed more than three years after Plaintiff's claim accrued, such claim is untimely.  Accordingly, Defendant's Motion must be granted, and the Court need not consider the remainder of Defendant's arguments in support of summary judgment.

**IV. CONCLUSION**

Accordingly, the Court ORDERS as follows:

1.  Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED; and

2.  The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

Defendant shall have its costs.

Dated this 28th day of August, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge